Larry C. MAYNARD, Appellant–
Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 30A05–0605–CR–273.

Court of Appeals of Indiana.

Jan. 18, 2007.

Gail M. Flatow, Law Office of Gail M. Flatow, Indianapolis, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Kelly A. Miklos, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

RILEY, Judge.

### STATEMENT OF THE CASE

Appellant–Defendant, Larry C. Maynard (Maynard), appeals his conviction for operating a motor vehicle while privileges are forfeited for life, a Class C felony, Ind.Code § 9–30–10–17.

We affirm.

### ISSUE

Maynard raises one issue on appeal, which we restate as follows: Whether the trial court appropriately denied Maynard's Motion to Dismiss based upon his claim that the officer issuing the information that led to Maynard's arrest was neither wearing a distinctive uniform nor a badge of authority pursuant to Indiana Code section 9–30–2–2.

### FACTS AND PROCEDURAL HISTORY

On May 16, 2005, at approximately 11:45 a.m., Spring Lake Town Marshal Richard Jefford, II, (Marshal Jefford) walked around the Spring Lake community on his daily round. He was wearing a T-shirt, shorts, and sneakers and did not carry his badge. While on Sugar Creek Drive, Marshal Jefford observed Maynard driving a blue Cadillac. Having known Maynard for about twenty years, Marshal Jefford was surprised to see him driving a car as he believed Maynard's driver's license to be suspended. Marshal Jefford wrote down the Cadillac's license plate number, and after walking home, drove to the Sheriff's Department in Greenfield, Indiana. At the Sheriff's Department, Marshal Jefford confirmed that Maynard's driving privileges had been suspended for life. Upon receiving this confirmation, he drafted an information, probable cause affidavit, and issued a "ticket." (Transcript p. 41). He then took the bundle of documents to the prosecutor's office and turned it in. Marshal Jefford was not involved in any further actions taken by the State.

On May 18, 2005, the State filed an Information, charging Maynard with operating a motor vehicle while privileges are forfeited for life, a Class C felony. Thereafter, on July 12, 2005, Maynard was arrested at his home on a bench warrant. On January 30, 2006, Maynard filed a pretrial Motion to Dismiss claiming that Marshal Jefford violated Indiana Code section 9–30–2–2. The trial court denied the motion that same day prior to the commencement of the jury trial. During the jury trial, Maynard unsuccessfully renewed his Motion to Dismiss. At the close of the evidence, the jury found Maynard guilty as charged. On March 29, 2006, during a sentencing hearing, the trial court sentenced Maynard to a four-year sentence, with two years suspended to probation and two years of home detention.

Maynard now appeals. Additional facts will be provided as necessary.

### DISCUSSION AND DECISION

■ Maynard's sole contention relates to the application of Indiana Code section 9–30–2–2. Specifically, Maynard claims that pursuant to the statute, Marshal Jefford lacked the authority to issue a traffic citation, as he was out of uniform and without a badge. Indiana Code section 9–30–2–2 provides:

> A law enforcement officer may not arrest or issue a traffic information and summons to a person for a violation of an Indiana law regulating the use and operation of a motor vehicle on an Indiana highway or an ordinance of a city or town regulating the use and operation of a motor vehicle on an Indiana highway unless at the time of the arrest the officer is:

(1) wearing a distinctive uniform and a badge of authority; or

(2) operating a motor vehicle that is clearly marked as a police vehicle;

that will clearly show the officer or the officer's vehicle to casual observations to be an officer or a police vehicle. This section does not apply to an officer making an arrest when there is a uniformed officer present at the time of the arrest.

▮▮▮ A question of statutory interpretation is a matter of law to be determined *de novo* by this court. *Pendleton v. Aguilar*, 827 N.E.2d 614, 619 (Ind.Ct.App.2005), *reh'g denied, trans. denied.* We are not bound by a trial court's legal interpretation of a statute and need not give it deference. *Id.* We independently determine the statute's meaning and apply it to the facts before us. *Id.* During our review, the express language of the statute and the rules of statutory construction apply. *Id.* We will examine the statute as a whole, and avoid excessive reliance on a strict literal meaning or the selective reading of words. *Id.* Where the language of the statute is clear and unambiguous, there is nothing to construe. *Id.* However, where the language is susceptible to more than one reasonable interpretation, the statute must be construed to give effect to the legislature's intent. *Id.* The legislature is presumed to have intended the language used in the statute to be applied logically and not to bring about an unjust or absurd result. *Id.* Thus, we are compelled to ascertain and execute legislative intent in such a manner as to prevent absurdity and difficulty. *Id.* In so doing, we are required to keep in mind the object and purpose of the law as well as the effect and repercussions of such a construction. *Id.*

With regard to the legislative intent, we note that Indiana Code section 9–30–2–2 was created for public policy reasons.

*Hatcher v. State*, 762 N.E.2d 189, 191 (Ind. Ct.App.2002). Specifically, we recognize that in enacting the statute, the legislature intended to ensure that the law enforcement officers who enforce our traffic laws are either wearing a uniform and badge or are driving a marked car when they effect an arrest or issue a traffic citation. *Id.* Such requirements encourage public policy in that they help to distinguish law enforcement officers from those individuals on our highways who, for illicit purposes, impersonate law enforcement officers. *Id.*

In the present case, Marshal Jefford, out of uniform and without a badge, spotted Maynard driving a blue Cadillac while he was walking his rounds in the community. As he believed Maynard's driving privileges to be revoked, Marshal Jefford drove to the Sheriff's Department after finishing his rounds. After he confirmed that Maynard's driver's license was forfeited for life, Marshall Jefford completed a probable cause affidavit and issued a ticket. All documents were then delivered to the prosecutor's office to decide whether to bring charges.

In the past, this court has rejected several attempts by the State to seek convictions based upon police officers acting in contravention to the statutory language. *See Davis v. State*, 858 N.E.2d 168 (Ind.Ct. App.2006) (a vest merely stating "POLICE" but not bearing the officer's name, that of the Indianapolis Police Department, or any other logo or distinguishing feature is not a uniform for purposes of the statute); *Bovie v. State*, 760 N.E.2d 1195 (Ind.Ct.App.2002) (a badge alone is not enough to controvert the requirement that a police officer must be in uniform or drive a clearly marked police vehicle to effectuate a traffic stop); *Miller v. State*, 641 N.E.2d 64 (Ind.Ct.App.1994), *trans. denied* (an officer not wearing a uniform or driving a police vehicle did not have the

authority to make an arrest for violating Indiana law regarding the use of motor vehicles); *State v. Caplinger*, 616 N.E.2d 793 (Ind.Ct.App.1993) (an officer not wearing a uniform or driving a police vehicle did not have the authority to arrest defendant for violating the use of motor vehicles under State law). However, unlike the instant case, all referenced cases include a direct confrontation between the officer and the defendant. Here, the record uncontrovertibly establishes that at no time did Marshall Jefford attempt to stop Maynard or present him personally with the summons or traffic ticket.

As there clearly was no contact between the parties, we find that Indiana Code section 9–30–2–2 does not apply. The unambiguous language of the statute requires that "a law enforcement officer may not arrest or issue a traffic information and summons *to a person*" without either wearing a uniform and badge or driving a marked police vehicle. I.C. § 9–30–2–2 (emphasis added). In the case at bar, Marshall Jefford did not personally engage with Maynard; instead, he invoked the assistance of the State to file charges and arrest Maynard on a bench warrant.

Furthermore, our interpretation is in line with the legislative intent in enacting this statute. As its purpose is to protect both citizens and police officers from harm during an encounter where an officer is attempting to use his official authority over the citizen to arrest, stop, or issue a summons, here, any possibility of danger was non-existent as there was no contact between the officer and the citizen. Accepting Maynard's invitation to construe the word "issue" to mean that each time an officer writes a probable cause affidavit and issues a summons, the officer must be in uniform with a badge, regardless of any contact between the officer and citizen, would not effectuate the intent of the legis-

lature. Accordingly, based on the evidence before us, we conclude that Marshal Jefford did not violate Indiana Code section 9–30–2–2. Therefore, the trial court did not err in denying Maynard's Motion to Dismiss.

## CONCLUSION

Based on the foregoing, we find that the trial court properly denied Maynard's Motion to Dismiss.

Affirmed.

KIRSCH, C.J., and FRIEDLANDER, J., concur.